We'll take the cases in the order on the day sheet. The first case for argument is Jatinder Singh v. Garland. Counsel? Good morning, your honors. I'm William Frick for Jatinder Singh. Just initially, the court may want to know this information, but Mr. Singh is likely to be granted permanent residence in the next few months based upon a U-Visa application that was filed on the 15th of April. The prosecuting attorney in Seattle has requested that he be granted that status. But to address... So what effect does that have on this case? Anything you're asking us to do based on that? No, your honor, just some background. It doesn't really affect the arguments here. Initially, it appears that the respondents argue that we filed the petition late. But it's extremely clear that we did comply with 8 U.S.C. 1252 B-1, which gives us 30 days after the mailing of the board's decision. The board didn't mail the decision to the correct address until the 23rd of August. How do we know that? I'm sorry, how do we know that? The post office said that it was incorrectly addressed. The post office said it couldn't be delivered. They eventually mailed it on the 23rd, and it was delivered properly. So the address on the original mailing was correct, as my understanding from the record. Is that wrong? Yes, your honor, that is incorrect. There's no proof that the stamp that says it was mailed to the incorrect address or that the post office couldn't deliver it. It was returned as undeliverable, but we can see from the record what address it was sent to. And the address it was sent the second time was the same as the address it was sent the first time. So I'm having trouble understanding your argument that the first address was incorrect. Your honor, how do you see from the record that it was mailed to the first address? The mailing envelope is in the record, and then there's a stamp that's returned undeliverable, and the government states that's what was returned to the BIA. I am not aware that there is, I believe that there's a letter that goes with every order, and that letter, which was not the envelope address, that letter has the correct address, but the post office put a sticker over the address that was on the envelope. So can I ask you, one of the odd things about the posture of this case is, as you know, often in these cases, you know, the petitioner goes back to the board and says, you know, I didn't get it in time, like please reissue the decision, and then the board either does or doesn't do that, and then we can review the board's fact-finding. But here, I mean, we're not usually in the position of, you know, having to look at the envelope and, you know, study what address was where, and then make initial factual determinations. So what's the basis for asking us to sort of look behind the statement from the board that, you know, they mailed it to the address that it turns out to have been the correct address? Your Honor, when we got the second mailing, it was clear that the first envelope had not been mailed to the correct address. Well, no, I mean, it was clear that something went wrong, right? So the something could be that despite having the right address on record, they actually mailed it somewhere else. Or the something could be that the post office made a mistake. And I believe the cases say that if it's the post office's mistake, that doesn't change the running of the clock, which starts when it was mailed. So how do we know that it was the board's mistake rather than the post office's mistake? Well, there's the case that indicates that government agencies are presumed, and that includes the post office, to have acted correctly, or to have done their job correctly. Let me just interrupt you. It's Judge Pregerson. I'm sorry to interrupt, but just looking at the copy that I have of the actual envelope, the window that would normally have the address is blank, which tells me that the most logical but it may have been simply inserted in the envelope backwards. We've all seen that happen, where it just doesn't match up with the window. So then the post office returns it as incorrect address, which we don't have any information that that description doesn't also mean no address. And you look at the sort of most logical explanation. Clearly, your client did not get it. And clearly there was some flaw in the system somewhere. And it seems to me the most logical flaw is that the letter inside was just simply not placed in front of the window. So if that's true, what does that mean in terms of your legal position? That would show that the letter was incorrectly addressed and not sent to my correct address, Your Honor. Well, incorrectly addressed, there's a presumption that the address in the letter is also the address that it was mailed to. But in this case, perhaps the presumption is rebutted because it seems through just the use of the technology of mailing with these little with these windows that, you know, there was just no address for the post office to deliver it to. Your Honor and I, you know, the rule of lenity in this case, if it's unclear, I mean, it seems as though there's a probability, a strong probability that the board mismailed this. And clearly we got it. We did get it. They did clearly mail it correctly on the 23rd. And we did respond within 30 days. But in the case where I think even in the case where it's unclear, we would ask the court to give Mr. Singh the benefit of the doubt here. Clearly it was returned to the board as addressed incorrectly, whether it was blank or there was some other address. The initial mailing, which may or may not have been wrong, was on August 10th, right? And even in the normal course, and that's mailed from Eora in Virginia, right? So even in the normal course, it could take a week for something to get here to Seattle from Virginia. So really the error cost you, you know, what, another five days. I guess the question that this is leading up to is you had an actual copy of the order well before the 30 days even measured from the initial mailing ran out. Is there any explanation for why you didn't just file within that 30-day period? Your Honor, we simply relied on the statute, on the USC 1252, that the document had to be mailed to our correct address. And clearly it hadn't been. Do you want to save some time for rebuttal? Yes, ma'am. Yes, Your Honor. We'll hear from the government. May it please the court. My name is Jonathan Robbins, and I'm here on behalf of the respondent, the United States Attorney General. A good morning to everyone. As you've just discussed with my colleague, the primary issue in this case is whether the court should dismiss this petition for review for lack of jurisdiction, because the petitioner did not file the petition for review within 30 days of the date of the final order of removal. Now, my colleague has said that he relied on the statute in deciding to wait until he received notice of the decision, but that's not what the statute says. What the statute says is that the petition for review must be filed not later than 30 days after the date of the final order of removal. So even though he didn't receive the initial mailing of the decision, he was not prevented from complying with the statute. He still had 18 days to be able to properly comply with the statute and file a timely petition for review. Now, if he had been prevented from filing a timely petition for review, that might be a recourse by filing a motion to reissue with the board. If he felt that 18 days wasn't enough to file a petition for review, he could have gone to the board and said that's not enough time, explained his reasons why it wouldn't be enough time, and gotten the board to reissue the decision. We've held that. We interpret the statute as saying that the BIA must comply with the terms of the regulation by mailing its decision to the correct address, and that's in our case law interpreting 8 CFR 1003.1 F. So if we don't know whether the letter was sent to the correct address or not, where does that leave us with respect to the application of our case law? Well, this case law does provide an analytical framework for determining what to do in those situations. There's a rule in this court, which is cited in the government's brief, that when a mailing is accompanied by a cover letter, as it was here by the board, with the proper address and the date, there's a presumption that the agency mailed it to the correct area. Now, that presumption can, of course, be rebutted, but we don't really have rebuttal evidence in this record to tell us who was at fault here. There's a number of different things that go back. Judge Ferguson, you have an exhibit that shows no address on. And, you know, in the old days, that presumption about the letter matching the address made sense because, you know, the mailbox rule goes back, I took a look at it, at least 400 years. And, you know, you were dealing with people handwriting things primarily. Now we're in the age of pass mailing. And we just have to recognize that sometimes these mechanized systems make mistakes. People make mistakes. And the only evidence we have before us is that there was a blank where there was supposed to be an address in a sealed envelope. So how isn't that, you know, compelling evidence that rebuts the presumption? Well, we really don't know. So there are a number of things that could have happened. Remember that the board used the right address. Your Honor may speculate that that's the case, but what we have is a copy in the record. Maybe it didn't show up in the copy. Maybe the envelope was altered before it was put in the record. We don't really know. You might be right. You might be that the window wasn't in the address, but it could be other things as well. It's possible that, you know, this goes to a suite in a big building. Maybe the building was closed and the post office wasn't able to get it through into the larger building. Yeah, there's any number of explanations that we don't really know. We can speculate, but yes. Whose exhibit do we have then that shows a photocopy of the envelope, the unopened envelope? Well, I don't know. I'm sorry, Your Honor. I can't tell from the record whether it's unopened. It's not entirely clear. That's part of the problem is we're left to speculate. Your Honor may be right. I can't say that you're wrong, but I don't know that you're right. And that's the problem is we don't really know. And the problem here is, I would also point out that... Well, wait a minute. We know the post office returned it. That's true. We know that for a fact. But we don't know why. That we don't know. And the why matters. The why definitely matters because what the law says about... As it happens, the law is actually under a prior version of the statute that is no longer in existence. The Martinez-Serrano case and the rule about the times, the clock starting with the mailing of the notice, that was under a prior version of the statute that doesn't contain language that this statute now has. Well, how could presumption ever be rebutted under these circumstances? You're telling me that there's a failure of evidence. You're telling me that you don't know where this exhibit that I have came from. You're telling me you don't know whether the envelope was with a rebuttable presumption that is, in effect, never going to be able to be rebutted. Well, it's possible that somebody might come in and might actually receive the notification at the particular address, but it's a shared address. And that person might provide an affidavit saying, oh, I received this and I didn't notify the person. I mean, there's any number of infinite hypotheticals where you could imagine where there might be a way to rebut the presumption. But the simple fact is, we don't have that in this record. And the statute doesn't require that you get 30 days of notice. What it requires is that the petition for review be filed within 30 days of the final order of removal. And the simple fact of the matter is, is that the petition in this case had notice with enough time to be able to file a timely petition for review. He had ample time, 18 days. And so there's no real reason why he couldn't have filed a timely petition for the statute. That's a different issue than the mailbox rule. Right. But the mailbox issue is related to a former statute that doesn't exist anymore. What was the change in the language? And take us through how the change in language is relevant. Now, prior to 1996, the statute used to read that you had to file a petition for review within 90 days of the quote date of issuance of the final order of deportation. So that was prior to 1996. Now that language date of issuance created a circuit split. There were circuits that disagreed about what that meant. The seventh circuit said, well, that means 90 days within the date of the order itself. This court and other circuits held, well, that's really the time when the board mails it and complies with the requirements for mailing. But that date of issuance language has been taken out of the statute. The statute now just reads, must be filed not later than 30 days after the date of the final order of removal. So the language that created that mailing rule is no longer there. Now there is a wrinkle. In 2003, this case has a case called Singh versus INS. It was from 2003 that was looking at the current iteration of the statute. And the court assumed that the mailbox rule applied to the new statute without actually addressing the statutory language. In other words, the court seems to have overlooked that the statute had changed and that the mailbox rule that was there no longer applied. So while we acknowledge that precedent, I don't think the court's bound by that precedent because it didn't examine the statutory language at issue. The statute doesn't say anything about mailing or notice. And the Supreme Court has been clear that judge-made are not supposed to supplant what the statutory language says. And the statute here has been repealed. The old language with respect to the mailbox rule has been repealed and replaced with this new statutory language which says the date that starts the clock is the date of the order itself. And the petitioner here was not deprived of an opportunity to file a timely petition within 30 days of that date. Now, hypothetically speaking, he received it on the 29th day instead of the 12th day. And he didn't have enough time. He has remedies. He can go to the board and say, I didn't receive notice of this in time to file a petition for review. He can file, as Judge Miller said, that's something that can come up to this court on review. Then you create a whole body of law dealing with how many days is a week enough? Is four days enough? What are the extenuating circumstances? Could you have chartered a private plane? Could a whole body of law be created? Well, Your Honor, that body of law already exists. This court regularly reviews, well, not regularly, but when it's called upon, reviews board's denials of motions to reissue. And it does so under the same standard as a motion to reopen and a motion to reconsider. But this court has reviewed the board's denial of a motion to reissue. So that body of law already exists. We're not creating anything. Well, I don't know. Okay. Thank you. Okay. Now, if the court does not want to delve into the jurisdictional issue here, the alternative here is to deny the petition for review on the next, because the motion to reopen itself was numerically barred. Plainly, the board was within its discretion to deny a motion that's numerically barred because that's consistent with what the regulations require it to do. So there's nothing arbitrary, capricious, or contrary to law in the board refusing to reopen a case that doesn't comply with the procedural requirements. And it's also worth pointing out that the petitioner was looking to adjust his status, and he's not even prima facie eligible to adjust his status because he entered without admission. So the form of relief he was seeking to be eligible for isn't even something he was eligible for anyway. So if the court wants to sidestep the jurisdictional issue and go to the merits, the petition for review should alternatively be denied. May I ask, before you sit down, do you have any comments on the point that your friend began with about the U visa? And do you have anything to add to that or any thoughts on whether that affects this case at all? Well, I agree with my colleague that it doesn't affect the issues in this case. So there's nothing preventing this court from deciding this case. If he has, I mean, he can always approach the agency. It sounds like he's not prima facie eligible yet for the U visa. It sounds like he just filed it recently. So I don't even know if he's prima facie eligible for that relief. So I can't speak to it. I haven't seen the U visa. It sounds like he might have the requirements in place, but I don't know that the agency has yet approved it. So it's a very speculative form of relief if it hasn't even been approved yet. But he can always go to the agency. He can go to DHS and ask them if they'll join in a motion to reopen or something along those lines. But as far as the purposes of this case is concerned, the court can resolve this case without concerning itself with that issue. May I ask one additional question, please? Yes. Was the notice sent by certified or regular mail? I suspect it was regular mail, but I don't know the answer to that. But I don't think it was certified mail. In the notice to appear context, this court has distinguished between the two and observed that regular mail is not entitled to the same quote strong presumption as certified mail. Does that distinction apply here? I don't know that there's any case law specifically addressing that within this context. But the rule in this court did not make a distinction between certified mail and regular mail. It said that when the board sends the mail with the cover letter, which we pointed to in our brief, and it's actually a copy of it in our brief, when it is accompanied by that, that's when the presumption kicks in. So the court has not previously made a distinction between certified mail or regular mail. Well, this court has in the context of notices to appear. That may be true, your honor, but not in the context of sending the decision, the rule with respect to the decision and the cases are cited in our brief. The court has not made that distinction with respect to the board mailing out the decision itself. It is what it is talked about is the cover letter that accompanies the decision. And they've said that the rebuttable presumption kicks in when that cover letter is attached and in that context. Any further questions? All right. I think we have your argument. Mr. Eric, you have a minute or so for rebuttal. Thank you, your honor. All right. My colleague states that we had 18 days to reply after we were notified that the envelope had been returned to the BIA. The law, however, though, gives us 30 days. And there's a reason for that because clients need to be notified. They need to make a decision whether they can afford to appeal. There are a lot of factors that go into the idea that 30 days is the right amount of time to make this decision. Also, I want to talk just briefly about the Martinez-Serrano and the Singh cases, both decided in 2003 after the 1996 change in the law. And I just believe that petitioners should be able to rely on Ninth Circuit precedent. With regard to the basis of our core argument about the constitutional right of Mr. Singh's to reside with her family, the respondents really didn't even address that. And so I'd just like the court to take note of that. All right. We thank you for your argument. And the case of Jitinder Singh v. Garland is submitted.
judges: IKUTA, MILLER, Pregerson